UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SUMMER DAWN RYNNING,<br><br>Plaintiff,<br><br>v.<br><br>EBBONY GRADDY, LAUREL TIMMINS, and LISA JARDINE,<br><br>Defendants. | CASE NO. 16-5378 RJB<br><br>ORDER ON DEFENDANT LAUREL TIMMINS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Laurel Timmins' Motion for Summary Judgment. Dkt. 32. The Court has reviewed the pleadings filed regarding the motion, the file, and is fully advised.

On May 19, 2016, Plaintiff filed this case, asserting that Defendants terminated her employment at W.J. Bradley Mortgage Capital ("Bradley") in violation of the Washington Law Against Discrimination, RCW 49.60, *et seq*. ("WLAD") when they denied her childbirth recovery leave three days after having her daughter via cesarean section. Dkt. 1. Defendant Laurel Timmins, Bradley's Senior Vice President of Human Resources at the time, now moves

for summary dismissal of the claim asserted against her.  Dkt. 32.  For the reasons provided below, Timmins' motion for summary judgment (Dkt. 32) should be granted.

## I.     FACTS AND PROCEDURAL HISTORY

### A. FACTS

In November of 2012, Plaintiff started working for a company in Washington called the Legacy Group.  Dkt. 35-10, at 1.   Plaintiff learned that she was pregnant in January of 2013.  *Id.*  The Legacy Group was acquired by Bradley in the spring of 2013.  Dkt. 35-9, at 6.  After the acquisition, Plaintiff was hired by Bradley as a loan officer assistant.  *Id.*

Defendants Ebony Graddy, a Human Resources Benefits Specialist, Lisa Jardine, Graddy's supervisor's (Emily Graddy) supervisor, and Timmins, Jardine's supervisor, all worked for Bradley in Utah.  Dkt. 35-7, at 3-4; 35-9, at 3-4.  Graddy states that, because she was new to Bradley, she discussed all leave requests with her supervisor, Jardine.  Dkt. 35-7, at 5-6, 44-45, and 51-52.  Although she was authorized to do so independently, Graddy states that she and Jardine made the leave related decisions as a "team," including the decisions regarding the Plaintiff here.  Dkt. 35-7, at 50.  Jardine states that she did not know she and Graddy discussed every leave request; Jardine thought she was giving Graddy general guidance.  Dkt. 35-8, at 3.  Graddy also asserts that although she had no training or books on Washington law, she would consult with Gail Andrist, a Bradley human resources department employee in Washington (who is not a defendant), regarding requests from Washington employees.  Dkt. 35-7, at 8.  Graddy states that her job duties included sending out standard letters informing people of decisions on their leave of absence applications, and the letter terminating their employment if the employee was unable to return to work after their leave period expired.  Dkt. 35-7, at 11-12.

The Plaintiff met Timmins (the moving party) when the human resources department processed the paperwork for Plaintiff to become a Bradley employee in the spring of 2013. Dkt. 35-9, at 12. Timmins states that the Plaintiff was visibly pregnant, but they did not discuss Plaintiff taking leave at that time. Dkt. 35-9, at 12-13. Instead, the Plaintiff discussed her unhappiness with her prior company. Dkt. 35-9, at 12.

On July 23, 2013, Graddy received an email from Andrist, notifying her that Plaintiff was experiencing a high risk pregnancy and that Plaintiff would be requesting leave, to start on August 9, 2013. Dkt. 35-7, at 29. On July 29, 2013, Graddy received an email from Plaintiff with an attached letter from her doctor supporting her time off request. Dkt. 35-7, at 30.

Graddy testified that because Plaintiff had not been with the company for a year or more, Plaintiff was subject to the company's policy that she would only be given six weeks leave because she did not qualify for [Family Medical Leave Act ("FMLA")] even though the baby was not due until September 26, 2013, after the six weeks ended. Dkt. 35-7, at 31. Graddy states that she and Jardine discussed Plaintiff's leave request, because they discussed every leave request. Dkt. 35-7, at 45. Further, Graddy, Plaintiff, and Andrist discussed the fact that her six week leave would end before the baby was due and emailed one another about it. Dkt. 35-3. Jardine states that she was aware that Plaintiff applied for and was granted a leave of absence. Dkt. 35-8, at 8-10.

On August 7, 2013, Plaintiff emailed both Graddy and Andrist, notifying both of them that she was concerned that Bradley was conflating two issues: (1) medical leave needed due to a health condition (high risk pregnancy) and (2) maternity leave. Dkt. 35-3, at 2. Plaintiff again reminded them that she would be forced to return to work before the baby was due, and she

would be delivering via cesarean section. *Id.* She expressed concern over losing her health insurance and stated that she would like to remain employed at Bradley. *Id.*

Plaintiff was given approved leave from August 12, 2013 to September 23, 2013. Dkt. 35-7, at 40.

Sometime before September 13, 2013, a meeting between Timmins, Jardine, Emily Graddy (Graddy's supervisor) and Graddy occurred and they discussed Graddy's difficulty in contacting the Plaintiff. Dkts. 35-8, at 11 and 35-9, at 13. Timmins states that Graddy told her she was having difficulty reaching the Plaintiff, "[the Plaintiff] was not responding . . . and she had exceeded or was about to exceed the time on her leave of absence." Dkt. 35-9, at 13. Timmins states that she was not told that the Plaintiff was pregnant at the time. Dkt. 35-9, at 14. Timmins states that she "walked them through the steps that you would go through, which is make sure that we had reached out to her. Make sure that they checked into any legalities related to the situation. Make sure they had calculated her time correctly . . ." Dkt. 35-9, at 14. According to Jardine, Timmins asked Graddy to make another attempt to contact the Plaintiff and to "check and make sure we were in compliance with all state and federal law." Dkt. 35-8, at 17. Jardine states that Graddy could have researched online, called "their people" in Washington, and/or contacted Bradley's general counsel. Dkt. 35-8, at 17.

On September 13, 2013, Graddy emailed Plaintiff and requested a form; a few days later, the Plaintiff emailed the form back. Dkt. 35-4, at 3. On September 18, 2013, Graddy emailed the Plaintiff and wrote, "as we discussed based on your six week leave of absence I show that your return to work date will be September 23, 2013." Dkt. 35-4, at 3.

On September 19, 2013, the Plaintiff emailed Graddy. Dkt. 35-4, at 2. That email provided, in part, "[a]s per our conversation, I informed you that I will not be returning on

September 23, 2013 as my C-section is on September 20, 2013." *Id.* Graddy responded on September 19, 2013, and stated that, "because you don't currently qualify for FMLA leave our Medical leave policy only allows a leave up to a maximum of 6 weeks. With your leave starting on August 12, 2013, the end of the six weeks would give you a return to work date of September 23, 2013." *Id.*

Jardine states that she was unaware that the Plaintiff asked for additional time after her approved leave period ended until this lawsuit was filed. Dkt. 35-8, at 13.

On September 25, 2013, Plaintiff's employment with Bradley was terminated. Dkt. 35-5, at 2. She was notified in a form letter signed by Graddy that Graddy says was used "for leave of absences when [Bradley employees] weren't able to be released back to work by their doctor." *Id.* and Dkt. 35-7, at 55-56. This letter provided, in part:

> You have been absent from work since August 12, 2013 and have exhausted the unpaid leave of absence granted you. You are ineligible for any additional leave of absence as required by state and federal laws or under any company policy. As there is no leave status available for a continued absence, you were required to return to work on Monday September 23, 2013. Since you did not return to work at this time, we must regrettably terminate your employment effective September 23, 2013. . .
>
> When you are able to return to work and should you be interested in future employment with [Bradley] please contact us for a list of current openings.

Dkt. 35-5, at 3.

Timmins and Jardine were unaware that Plaintiff's employment had been terminated until the lawsuit was filed. Dkts. 35-8, at 10 and 35-9, at 17. Graddy states that Timmins did not play any role in any of the decisions regarding Plaintiff's leave of absence. Dkt. 33-2, at 11.

**B. PROCEDURAL HISTORY**

Plaintiff's complaint asserts a claim for violation of the WLAD against each Defendant. Dkt. 1. Plaintiff seeks damages, costs, and attorneys' fees. *Id.*

After Plaintiff filed this case, asserting this Court has diversity jurisdiction, she filed a notification that the U.S. Bankruptcy Court in the District of Delaware entered an order temporarily staying this case and was considering whether the automatic stay (based on the filing of a bankruptcy petition) entered in *Rynning v. W.J. Bradley*, *et al,* Western District of Washington case number 15-5624 RJB (Plaintiff's employment discrimination case against Bradley) ("Bradley case"), should also be entered in this case. Dkt. 8. On August 22, 2016, the Delaware bankruptcy court entered an order extending the automatic stay entered in the Bradley case to all Defendants in this case. Dkt. 9-1; *In re W.J. Bradley Mortgage Capital, LLC,* U.S. Bankruptcy Court for the District of Delaware case number 16-11049 KG. The stay remained in place until July 31, 2017, when it was lifted. Dkt. 22.

After the stay was lifted, the parties engaged in discovery; the instant motion followed.

**C. TIMMINS' MOTION FOR SUMMARY DISMISSAL OF WLAD CLAIM**

In her motion for summary judgment, Timmins argues that the WLAD claim asserted against her should be dismissed because there is no evidence that Timmins affirmatively engaged in discriminatory conduct. Dkt. 32.

Plaintiff opposes the motion, and contends that Timmins individually liable as a supervisor and for aiding, abetting, encouraging or inciting another to engage in an unfair practice under RCW § 49.60.220. Dkt. 34.

Timmins replies and argues that there is no evidence that she participated in the decision to terminate Plaintiff's employment or that she is liable under RCW § 49.60.220. Dkt. 36.

**II. DISCUSSION**

**A. STANDARD ON MOTION FOR SUMMARY JUDGMENT**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B. APPLICATION OF STATE SUBSTANTIVE LAW

As a federal court sitting in diversity, this court is bound to apply state law. *State Farm Fire and Casualty Co. v. Smith*, 907 F.2d 900, 901 (9th Cir. 1990). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001)(*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) *(internal quotation marks omitted*)).

### C. WLAD

Under the WLAD, "pregnancy related employment discrimination claims are properly treated as matters of sex discrimination." *Hegwine v. Longview Fibre Co., Inc*., 162 Wn.2d 340, 350 (2007). The WLAD prohibits "unfair practices" by employers, including discharging "any person from employment based on . . . sex" and/or discriminating "against any person in compensation or in other terms or conditions of employment based on . . . sex." RCW § 49.60.180 (2) and (3). Further, the Washington Administrative Code 162-30 ("WAC"), which "interprets and implements the sex discrimination protection in [WLAD]," requires that "[a]n employer shall provide a woman a leave of absence for the period of time that she is sick or temporarily disabled because of pregnancy or childbirth." WAC 162-30-020 (4)(a).

Plaintiff maintains that Timmins' motion for summary dismissal should be denied because she is liable under the WLAD as both (1) a supervisor, and (2) for aiding, abetting, encouraging, inciting the discriminatory conduct under RCW § 49.60.220. Dkt. 34. Each will be examined in turn.

1. Liability as Supervisor

The WLAD defines "employer" as "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons[.]" RCW § 49.60.040 (3). Accordingly, "individual supervisors, along with their employers, may be held liable for their discriminatory acts" under the WLAD. *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 361 (2001). "Supervisors are liable when they *affirmatively* engage in discriminatory conduct." *Id.*, at 360 n. 3 (*emphasis in original*).

To the extent Plaintiff makes a claim against Timmins in her individual capacity as a supervisor, Timmins' motion for summary dismissal of the claim (Dkt. 32) should be granted. Plaintiff has failed to point to evidence that Timmins affirmatively discriminated against her. The evidence in the record is that Timmins saw Plaintiff in the spring, while she was pregnant. There is no evidence that they discussed Plaintiff's need for leave or anything related to the pregnancy at that time. Around September 13, 2013, Timmins participated in a meeting regarding Graddy's inability to reach Plaintiff while Plaintiff was out on medical leave. There is no evidence that Timmins knew that Plaintiff was still pregnant or had not already had the baby. Timmins and Jardine stated that Timmins told Graddy to attempt to reach out to Plaintiff again, to make sure they were complying with state and federal law, and to ensure that they had calculated the number of days Plaintiff had been off correctly. Graddy, the person that signed and sent the discharge letter, maintains that Timmins "played no role" in the decisions regarding

Plaintiff's leave. There is no evidence that Timmins knew Plaintiff requested more leave, or that Timmins knew that Plaintiff's employment was terminated until this lawsuit was filed. There is no evidence that Timmins "affirmatively engaged in discriminatory conduct" against the Plaintiff. *Brown,* at 360 n. 3.

        2. <u>Liability for Aiding, Abetting, Ect. under RCW § 49.60.220</u>

The WLAD further provides that "[i]t is an unfair practice for any person to aid, abet, encourage, or incite the commission of any unfair practice, or to attempt to obstruct or prevent any other person from complying with the provisions of this chapter or any order issued thereunder." RCW § 49.60.220. "RCW 49.60.220, although broad, focuses on conduct that encourages others to violate the WLAD." *Jenkins v. Palmer*, 116 Wn. App. 671, 675 (2003). This section's "references to 'aid, abet, encourage, or incite' and to 'prevent any other person from complying' show that the statute applies only where the actor is attempting to or has involved a third person in conduct that would violate the WLAD." *Id.,* at 675-676 (*quoting* RCW 49.60.220). "Mere knowledge of harassing or discriminatory behavior is not sufficient to create liability for aiding and abetting, however. What is required is proof that the defendant has engaged in actions for the purpose of encouraging or assisting another to discriminate." *See Yousefi,* at 3 (*citing Rody v. Hollis*, 81 Wash.2d 88, 94–95, 500 P.2d 97 (1972)).

To the extent Plaintiff makes a claim against Timmins for aiding, abetting, encouraging, or inciting the commission of any unfair practice, or to attempt to obstruct or prevent any other person from complying with the WLAD, Timmins' motion for summary dismissal of the claim (Dkt. 32) should be granted and the claim dismissed. Plaintiff has failed to point to evidence from which a jury could conclude that Timmins engaged in actions for the purpose of aiding, abetting, encouraging, or inciting others to discriminate against Plaintiff. To the extent that the

Plaintiff asserts that Timmins knew or should have known that Plaintiff was being discriminated against and failed to take steps to correct it, this is the sort of claim made against an employer not against a supervisor. *See Davis v. Fred's Appliance, Inc.,* 171 Wn. App. 348, 362 (2012). There is no evidence that Timmins "involved a third person in conduct" that would violate the WLAD. *Jenkins,* at 676.

**D. CONCLUSION**

Plaintiff has failed to point to evidence in the record from which a fact finder could conclude that Timmins is liable under the WLAD to Plaintiff as either a supervisor or for aiding, abetting, encouraging, or inciting the discriminatory conduct under RCW § 49.60.220. Timmins' motion to summarily dismiss the WLAD claim asserted against her (Dkt. 32) should be granted. Trial on Plaintiff's WLAD claims against the remaining two Defendants, Graddy and Jardine, is set to begin on October 15, 2018. Dkt. 28.

**ORDER**

It is **ORDERED** that:

- Defendant Laurel Timmins' Motion for Summary Judgment (Dkt. 32) **IS GRANTED**; and
- The claim asserted against Laurel Timmins' **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 16th day of August, 2018.

ROBERT J. BRYAN
United States District Judge